JOHN W. HUBER, United States Attorney (#7226)
J. DREW YEATES, Assistant United States Attorney (#9811)
ROSE E. GIBSON, Special Litigation Counsel, Civil Rights Division
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone:   (801) 524-5682 • Facsimile:   (801) 325-3387

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | : | Case No. 2:19-cr-00057 |
|---|---|---|
| Plaintiff, | : | |
| | | TRIAL MEMORANDUM OF THE |
| vs. | : | UNITED STATES |
| ALAN DALE COVINGTON, | : | |
| Defendant. | : | Judge Howard C. Nieslon, Jr. |

The United States of America, by and through its undersigned counsel, hereby submits its Trial Memorandum to the Court in the above-captioned case.  This case is set for a five-day jury trial to commence on July 29, 2019 at 10:00 a.m.

## **FACTUAL SUMMARY**

On Saturday November 24, 2018, just three days before the attack at Lopez Tires, Alan Dale Covington went into Tito's Auto Sales (Tito's) in Salt Lake City, Utah.   Tito's is less than five miles from Lopez Tires.   Tito's has Spanish words on the signage and is the employer of one or more person(s) of Mexican national origin.   Covington arrived at Tito's armed with a shovel and yelled that he was going to "kill all those Mexicans."   The owner of

Tito's, Jorge Crespo approached Covington and told Covington that he was Venezuelan. Covington responded that he was "looking for Mexicans" because the "cartel" had harmed his family. Covington yelled that he was going to "kill them all." After learning that Crespo was not Mexican, Covington left Tito's and never attacked anyone.

Three days later, on November 27, 2018, Alan Covington walked into Lopez Tires, a family-owned and operated business in Salt Lake City, Utah. Like Tito's, Lopez Tires has Spanish words on the signage. Lopez Tires is operated by Jose Lopez, a man of Mexican ancestry. Covington was armed with a three-foot-long metal pole and a hatchet concealed in his waist-band. Covington announced that he was going to "kill Mexicans," and then he assaulted Jose, and Luis Lopez, and attempted to assault Angel Lopez.

On this day, Jose's 18-year old son, Luis Lopez, had arrived at the tire shop and opened it for business. By the time Covington arrived, Jose Lopez, his son Luis, and Jose's brother Angel were preparing to eat breakfast inside the tire shop. Luis saw Covington enter the parking area of the tire shop. Assuming Covington was a customer, Luis went to assist him. Luis began by asking Covington if he needed help. Covington responded by asking Luis if he was a member of the Mexican mafia. Covington then accused Luis of killing his daughter, and said he was there to "kill Mexicans."

Jose and Angel Lopez heard Covington yelling. They walked outside the shop and found Covington accosting Luis in the parking lot. Covington turned toward Jose and Angel and demanded to know if they were Mexican. Covington said that he was there to "kill Mexicans." Concerned for the safety of his son, Jose asked Covington to leave the tire shop.

2

Covington initially seemed prepared to leave the tire shop, but as Jose and Covington reached the sidewalk in front of Lopez Tires, Covington suddenly began swinging the metal pole at Jose. Luis, fearing for his father's safety, retrieved a tire iron. Luis walked to the sidewalk where he saw Covington holding the metal pole and continuing to yell at his father. Covington swung the metal pole at Luis, without warning or provocation. Luis was able to block Covington's first blow with the tire iron he was holding, but Covington swung with such force that he knocked Luis to the ground. As Luis attempted to get to his feet, Covington struck Luis in the face with the metal pole, crushing several bones in Luis's face and forcing Luis back to the ground.

    As Covington moved toward Luis, Jose stood protectively over his son, facing away from Covington. Covington repeatedly hit Jose in the back with the metal pole. Covington retreated for a moment but then began to swing the pole at Angel. Covington was never able to hit Angel, as Angel backed away each time Covington swung the pole at him. Angel took off his belt and attempted to take the metal pole away from Covington but was unsuccessful. Covington threatened Angel verbally and with the metal pole. Covington repeatedly yelled that he would return and kill Angel as Covington walked away from the tire shop. Afraid that Covington would escape, Angel followed Covington from the tire shop and down the road. Eventually, Salt Lake City Police (SLCPD) officers arrived and Angel was able to point them in the direction of Covington.

    SLCPD officers arrested Covington only blocks from the scene of the attack. Covington was uninjured and still holding a metal pole that matched the description of the

weapon used to attack the Lopez family.   SLCPD officers asked Covington if he had other weapons on his person.   Covington denied having other weapons, but officers located a hatchet concealed in his pants.

Covington participated in a voluntary interview with SLCPD detectives.   After being read *Miranda* warnings, Covington told police that he had gone to the tire shop looking for members of the Mexican Mafia and that he believed the owners of the tire shop were Mexican. Covington told SLCPD detectives that he intended to ask "every Mexican . . . [if they were] . . . related to the Mexican Mafia."   Covington added, "all Mexicans know each other." Covington claimed that he had been in a "fight" and had used the metal pole in self-defense.

Later, Covington sent a letter to the Federal Bureau of Investigation again claiming that "three Mexican Mafia guys had attacked him."   Covington also asked the FBI to investigate area Mexican-owned businesses, including Lopez Tires and Tito's Auto Sales. Later, in calls Covington placed from the jail, where he has been held pending trial, Covington has continued to claim to his family members that he was attacked by the Mexican mafia.

As a result of Covington's attack, Luis Lopez suffered a collapsed eye socket and broken bones on his right cheek.   Luis underwent reconstructive surgery to repair his eye socket and cheekbones.   Jose Lopez suffered large bruises on his back and a cut on his forearm that required stitches.   Photos taken of Jose's back after the incident clearly show the imprint of the metal pole Covington used to attack the Lopez family.

On February 20, 2019, a federal grand jury in the District of Utah returned an indictment charging Covington with three counts of violating 18 U.S.C § 249(a)(2) for

4

willfully causing and attempting, through use of dangerous weapon, to cause bodily injury to Luis, Jose, and Angel Lopez because of the victim's perceived national origin, namely that the defendant believed they are Mexican. The indictment further alleges that the offense against Luis Lopez included an attempt to kill.

## **APPLICABLE LAW**

18 U.S.C. § 249(a)(2) prohibits "willfully caus[ing] bodily injury to any person or, through the use of . . . a dangerous weapon . . . attempt[ing] to cause bodily injury to any person, because of the actual or perceived . . . national origin of any person." *Id*. The elements for Count 1 are:

1. That the defendant willfully caused or attempted, through the use of a dangerous weapon, to cause bodily injury to the victims;

2. That the defendant acted because of the actual or perceived national origin of any person; and

3. That the conduct described in the first three elements occurred in one of the following circumstances: either (a) the defendant employed a dangerous weapon that had traveled in interstate and foreign commerce; or (b) the defendant's conduct interfered with the commercial or other economic activity in which the victim was engaged in at the time of the conduct.

For Count 1 only, the United States also seeks to prove that defendant's assault on Luis Lopez included an attempt to kill.

1. <u>Defendant willfully caused or attempted to cause bodily injury to the victims</u>.

For the first element, the United States is prepared to prove beyond a reasonable doubt that Covington willfully caused bodily injury to Luis and Jose Lopez and attempted, through the use of a dangerous weapon, to cause bodily injury to Angel Lopez. A defendant acts

willfully when he acts voluntarily and intentionally, with intent to do something the law forbids. *United States v. Overholt*, 307 F.3d 1231 (10th Cir. 2002). Section 249 defines "bodily injury" as a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary. 18 U.S.C. § 249(c)(1)(citing § 1365(h)(4)).

Covington acted intentionally and voluntarily when he swung the metal pole repeatedly at the Lopez family. There was no legal justification for Covington to cause bodily injury to Luis or Jose. Here, the evidence will show that Covington came to the Lopez family business armed with a metal pole and a hatchet. He held the metal pole over his shoulder and demanded to know if the Lopez men were Mexican. Before beginning to swing the pole at the Lopez men, Covington repeatedly said that he was going to "kill Mexicans." The Lopez men were entitled to protect themselves against the defendant. Conversely, Covington had no legal justification to attack the Lopez family. "A person is entitled to defend himself against the immediate use of unlawful force." Instr. 1.28 *Pattern Jury Instructions, Criminal Cases*, 10th Cir. (2011). Here, any force the Lopez men used against Covington was in response to Covington coming into their business armed and threatening to kill them. Therefore, Covington's assault was not legally justified.

The evidence will show that when Covington caused bodily injury to Luis and Jose Lopez and attempted to cause bodily injury to Angel Lopez he did so willfully. Covington repeatedly struck Luis and then Jose with the metal pole. The defendant's repeated strikes show that each blow was undertaken intentionally and deliberately. Luis suffered injury to

his face including a large gash and crushed facial bones that required surgery to repair. Jose suffered a gash to his arm that required stitches as well as a large bruise on his back where he was struck with the metal pole. Thus, defendant willfully caused bodily injury to Jose and Luis Lopez.

The United States is prepared to prove beyond a reasonable doubt that Covington attempted, through the use of dangerous weapon, to cause bodily injury to Angel Lopez. The metal pole Covington used during the attack was a dangerous weapon. The Commentary of section 1B1.1 of the Sentencing Guidelines defines "dangerous weapon" as any "instrument capable of inflicting death or serious bodily injury." *See* USSG § 1B1.1; comment (n.1 (D)). *See also United States v. Tissnolthotos,* 115 F.3d 759, 763 (10th Cir. 1997) (holding that a piece of firewood was a dangerous weapon) *citing United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir. 1994) ("Courts have found that, in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks"). A metal pole is capable of causing death, and, in this instance, caused serious bodily injury.

Here, Covington repeatedly swung the metal pole in attempt to injure Angel Lopez. An attempt is satisfied where a defendant takes a "substantial step toward committing the crime." Instr. 1.32 *Pattern Jury Instructions, Criminal Cases*, 10th Cir. (2011). A substantial step "is something beyond mere preparation. A substantial step is an act which, in the ordinary and likely course of events, would lead to the commission of the particular crime. The step must be a strong indication of the defendant's criminal intent, and must unequivocally mark the defendant's acts as criminal. It should demonstrate

commitment to the crime charged." *Id.* Here, Covington repeatedly swung a metal pole at Angel while shouting that he would kill him. Accordingly, Covington attempted to cause bodily injury to Angel Lopez.

2. <u>Defendant acted because of the actual or perceived national origin of the Lopezes</u>.

For the second element, the United States is prepared to prove beyond a reasonable doubt that Covington attacked the Lopez family because of his perception that the men are Mexican. *Burrage v. United States*, 134 S. Ct. 881, 888-89 (2014) ("because of" normally requires proof "'that the harm would not have occurred' in the absence of–that is, but for–the defendant's conduct" )(quoting *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013)). *See also United States v. Miller,* 767 F. 3d 585, 592-594 (6th Cir. 2014) (discussing "but for" requirement finding that "[f]or an assault to be a federal hate crime, the victim's protected characteristic must be a but-for cause behind the defendant's decision to act").

While, the United States must prove that the assaults and attempted assault would not have occurred but-for the defendant's perception of the victims' actual or perceived national origin, there can be more than one reason for the assaults, as long as the victims' national origin played a determinative role in the subject's decision to assault each victim. *Burrage*, 134 S. Ct., at 888 (but-for causation is shown where "the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so–if, so to speak, it was the straw that broke the camel's back"). Recently, in *United States v. Porter,* a hate crime case from the District of Utah, the Tenth Circuit followed several other circuits and stated that but-for causation does not mean sole cause. *Porter*, No. 18-4081, 2019 WL 2707720 (10th Cir.

June 28, 2019) (citing with approval *McDonald v. City of Wichita, Kansas*, 735 F. App'x 529, 531–32 (10th Cir. 2018), *cert. denied sub nom. McDonald v. City of Wichita, Kan.*, 139 S. Ct. 944, 203 L. Ed. 2d 132 (2019) (holding that jury instructions equating but-for causation and sole causation are "legally erroneous").

Covington's statements that he wanted to "kill Mexicans" and his statements to the victims that he intended to "kill Mexicans" prove that he attacked the Lopez men because he perceived them to be Mexican. *United States v. Porter*, No. 18-4081, 2019 WL 2707720 (10th Cir. June 28, 2019) (finding that "a defendant's expression of racial animus before and after the criminal act was probative of intent."). *See also United States v. Woodlee,* 136 F.3d 1399, 1410 (10th Cir. 1998).   In *Woodlee*, the court admitted evidence of the defendant refusing to attend a social gathering after he learned a person of mixed race was going to attend.  On appeal, the Tenth Circuit explained that where the government is required to prove defendant acted because of the victim's race, or color, religion, evidence of past racial animosity is relevant to establish this element of the offense. S*ee also United States v. Franklin,* 704 F.2d 1183, 1188 (10th Cir. 1983) (allowing admission of defendant's prior assault on an interracial couple as evidence of his racial animus, in a 18 U.S.C. § 245(b) trial where defendant was found guilty of killing two black men who he observed in the company of two white women in a Utah park, even where defendant did not deny racism, because "racial motive was still an element of the crime that the government had to prove").[1]

---

[1] 18 U.S.C. § 245(b) states in pertinent part: "Whoever. . . by force or threat of force willfully injures, intimidates or interferes with , or attempts to injure, intimidate or interfere with . . . any person because of his race, color, or national origin and because he is or has been. . .

3. <u>Circumstances described</u>.

For the third element, the United States is prepared to prove beyond a reasonable doubt that the dangerous weapon used to attack the Lopez family traveled in interstate and foreign commerce. Alternatively, the United States can prove beyond a reasonable doubt that Covington's attack interfered with the commercial and economic activities the victims were engaged in at the time of the attack. The United States is prepared to prove both beyond reasonable doubt.

    i.  <u>The defendant employed a dangerous weapon that had traveled in interstate and foreign commerce</u>.

First, as described above, the metal pole clearly meets the definition of a dangerous weapon. This satisfies the final element for a prosecution under section 249(a)(2). Instr. 2.09 *Pattern Jury Instructions, Criminal Cases*, 10th Cir. (2011) [Assaulting a Federal Officer] (defining "deadly or dangerous weapon" as "any object capable of inflicting death or serious bodily injury"); *United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015) (explaining that "a Taser—even in drive-stun mode—is a dangerous weapon."); *United States v. Tissnolthotos*, 115 F.3d 759, 763 (10th Cir. 1997) (holding a piece of firewood was a dangerous weapon) *citing United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir 1994) ("Courts have found that, in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks").

    ii.  <u>The defendant's conduct interfered with the commercial and economic activity in which the victims were engaged in at the time of the attack</u>.

---

participating in or enjoying any benefit. . . shall be imprisoned for any term of years or for life."

10

Second, the United States will offer evidence to prove beyond a reasonable doubt that the defendant's conduct interfered with the "commercial or other economic activity" that the victims were "engaged in at the time of the [assault]." 18 U.S.C. § 249(a)(2)(B)(iv)(I). Commercial and economic activity has been broadly construed by the federal courts to include the operation of restaurants, day care centers, and even the sale of marijuana. *See United States v. Aman,* 480 F. App'x 221 (4th Cir. 2012) (rejecting commerce clause challenge to prosecution for setting fire to a restaurant); *United States v. Terry*, 257 F.3d 366 (4th Cir. 2001) (holding that a day care center was "actively engaged in commercial activity."); *Taylor v. United States*, 136 S. Ct. 2074, 2078 (2016) (upholding a Hobbs Act conviction where the defendant robbed a drug dealer, as drug dealing is commercial activity).  After citing *Terry* with the approval, the Tenth Circuit held that a Jewish temple that had a day care center and a gift shop was being actively employed for commercial purposes. *United States v. Gillespie*, 452 F.3d 1183 (10th Cir. 2006)(upholding a conviction under the federal arson statute 18 U.S.C. § 844(i)).  At least one District Court in Utah has followed the reasoning in *Gillespie* and found that a library "was being actively employed for commercial purposes," for purposes of the federal arson statute, 18 U.S.C. §844(1). *United States v. Zajac*, No. 2:06 CR811DAK, 2008 WL 1808701, at *2 (D. Utah Apr. 21, 2008).

While the United States is required to prove that the victims were engaged in economic or commercial activity, the government is not required to provide further evidence that Covington's attack had an impact on interstate commerce. *Taylor v. United States*, 136 S. Ct. 2074, 2078 (2016).  In *Taylor v. United States*, the Supreme Court upheld a Hobbs Act

conviction where the defendant "robbed or attempted to rob a drug dealer of drug proceeds," and stated that the government need not introduce further evidence of the robber's impact on interstate commerce. *Id.* The Supreme Court said that "by targeting a drug dealer in this way, a robber necessarily affects or attempts to affect commerce." *Id.* The Fourth Circuit similarly upheld a Hobbs Act conviction without requiring proof of the adverse impact a robbery had on the particular business. *United States v. Simpson*, 659 F. App'x 158 (4th Cir. 2016). The Court explained that taking even "small sums" of money from the drivers, who were "performing tasks within the scope of employment when they were robbed," was sufficient to satisfy the statute's commerce element and the Commerce Clause. *Id.* at 161.

Recently, in *United States v. Hill*, a hate crime case charged under 18 U.S.C. § 249(a)(2)(B)(iv)(I), the Fourth Circuit held that evidence that the defendant punched his co-worker while the co-worker was performing work and causing the victim to stop working and leave work for at least one day, the "defendant's prosecution was sufficiently connected to interstate commerce to be consistent with Congress's Commerce Clause authority." *United States v. Hill*, No. 18-4660, 2019 WL 2454848 (4th Cir. June 13, 2019). The Fourth Circuit held that the defendant's assault of the victim at his place of employment "easily falls under Congress's broad authority to regulate interstate commerce." *Id.*

Here, the evidence will show that, like the victim in *Hill*, the victims in the instant matter were working during business hours at their family-owned tire shop when they were attacked. After the attack, the Lopez men were unable to return to work. Luis and Jose received medical care at the hospital. With Luis seriously injured, Jose closed the tire shop, which prevented

12

Angel from performing work. Like defendant Hill, Covington's attack directly interfered with the commercial and economic activity in which the Lopez men were engaged in at the time of his attack.

4. Defendant's conduct included an attempt to kill (Count 1).

Finally, with respect to Count 1 of the Indictment, the United States is prepared to prove beyond a reasonable doubt that the defendant's attack on Luis Lopez included an attempt to kill. The Covington entered Lopez Tires and said that he was looking to "kill Mexicans." Covington then struck Luis Lopez in the head with a metal pole while Luis was unarmed and in a vulnerable position.

The Tenth Circuit Pattern Jury Instructions define "attempt" as a "substantial step toward committing the crime." Instr. 1.32 *Pattern Jury Instructions, Criminal Cases*, 10th Cir. (2011). Here, Covington announced that he wanted to "kill Mexicans" and then used a metal pole to strike Luis in the head, a blow that could have been fatal. The defendant's threat to kill and his subsequent conduct prove that his attack on Luis Lopez included an attempt to kill.

## ANTICIPATED ORDER OF PROOF

The United States anticipates calling approximately a dozen witnesses in its case-in-chief. The three victims in the case, Luis, Jose, and Angel Lopez, will offer eyewitness accounts, including statements the defendant made before, during, and after the attack. Kurosh Darvish, Arturo Ramirez, Tammy Oliver, Dortha Taylor, and Kathy Hedden will testify regarding the portions of the attack that they each witnessed.

Jorge Crespo will testify that, three days before the attack at Lopez Tires, the defendant

entered Tito's Auto Sales armed with a weapon and threatened to "kill Mexicans." Gregg Robisch is a senior account executive at Acme Manufacturing Company. If necessary, Robisch is prepared to testify that the metal pole that the defendant used to assault the Lopez men was manufactured in China and then shipped to Acme Manufacturing in Denver, Colorado for distribution. Robisch will testify that the metal pole was purchased by Acme in 2003.

The United States may call: Salt Lake City Police Department (SLCPD) Officer Tyler Tracey, who arrested Covington on the day of the attack; and SLCPD Officer Kevin Easter, who searched Covington after he attacked the Lopez family and located a hatchet concealed on his person. The United States expects to call Luis Lopez's attending physician, who will testify as to the extent and treatment of Luis Lopez's injuries. If necessary, Taylor Lemcke will testify as to the authenticity of the U.S. Bank security camera video that shows Covington attacking Jose Lopez from behind. If necessary, an FBI employee will offer testimony regarding the FBI's enhancement of the U.S. Bank video. Finally, the United States expects that Jessica Van Dyke will testify regarding DNA evidence obtained during the investigation.

## CONCLUSION

The evidence presented by the United States at trial will prove beyond a reasonable doubt that Alan D. Covington violated 18 U.S.C § 249(a)(2) when he shouted "I'm going to kill Mexicans," struck Luis and Jose Lopez with a metal pole, and then attempted, through the use of this dangerous weapon, to assault Angel Lopez. Covington willfully caused

bodily injury to both Luis and Jose Lopez and his assault on Luis Lopez included an attempt to kill.

  RESPECTFULLY SUBMITTED this 15th July 2019.

            JOHN W. HUBER
            United States Attorney

            /s/   *J. Drew Yeates*
            J. DREW YEATES
            Assistant United States Attorney


            /s/   *Rose E. Gibson*
            ROSE E. GIBSON
            Special Litigation Counsel
            Civil Rights Division