ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
J. DREW YEATES, Assistant United States Attorney (#9811)
ROSE E. GIBSON, Special Litigation Counsel, Civil Rights Division
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:19-cr-00057 |
| Plaintiff, | : | |
| | | SENTENCING MEMORANDUM |
| vs. | : | |
| ALAN DALE COVINGTON, | : | |
| Defendant. | : | Judge Howard C. Nielson, Jr. |

The United States, by and through the undersigned prosecutors, hereby submits its sentencing memorandum. The United States has reviewed the Pre-Sentence Report (PSR) dated April 1, 2021. The United States has no objections with the conclusions or guidelines calculations. The United States asks this Court to impose a term of incarceration between 360 months and life in prison; this is a guideline sentence that is sufficient but not greater than necessary to serve the purposes set out within 18 U.S.C. § 3553(a).

A substantial prison sentence is necessary to reflect the seriousness of the offense

and to keep the public safe from this defendant who has engaged in a life of increasingly violent crimes. The United States intends to make further argument in support of this recommendation at the sentencing hearing on April 19, 2021.

I. **Introduction**

On February 20, 2020, the defendant, Alan Dale Covington, was convicted by a jury of three counts of violating 18 U.S.C. § 249(a)(2). At trial, the evidence proved that Covington armed himself with two weapons – a hatchet and a large, heavy, metal pole – and then entered Lopez Tires, a family-owned business in Salt Lake City, shouting that he wanted to "Kill Mexicans." The evidence proved that before beginning his attack, Covington demanded to know if Luis Lopez was Mexican. The Lopez family are of Mexican ancestry. Covington violently attacked the Lopez family, viciously striking Luis Lopez in the head with the metal pole and inflicting serious injuries that ultimately required reconstructive surgery and hospitalization. Covington also attacked Jose Lopez from behind, repeatedly hitting him in the back with the pole, as Jose stood protectively over Luis, his son, who was laying on the ground and choking on his own blood. According to witnesses at trial, Covington ended his attack on Jose and Luis only when Angel Lopez, Luis's uncle, pulled off his own belt and chased Covington from the scene. As Angel Lopez swung his belt in desperation at Covington, attempting to get Covington away from his injured family members, Covington turned his attack on Angel, repeatedly swinging the metal pole at Angel. Even as Covington fled from the scene, he yelled that he would

return and kill Angel.

At the conclusion of a five-day jury trial, the jury found Covington guilty of all three counts of violating 18 U.S.C. § 249(a)(2); the jury also found that Covington's attack on Luis Lopez included an attempt to kill. (Doc. 172.)

## II. Pre-Sentence Investigation Report

The United States recommends that this Court adopt the guidelines calculation within the PSR. The PSR correctly found that the Adjusted Offense Level for Count 1 is 40. (PSR at paragraph 27). The offense level for a violation of 18 U.S.C. § 249(a)(2) is found in USSG § 2H1.1. Section 2H1.1 directs the court to apply "the offense level from the offense guideline to any underlying offense." USSG § 2H1.1(a)(1). Here, the PSR properly concluded that the underlying offense is Assault with Intent to Commit Murder pursuant to USSG § 2A2.1(a). (PSR at paragraph 22). Section 2A2.1 provides for a base offense level of 33 when the "object of the offense would have constituted first-degree murder." USSG § 2A2.1(a). First-degree murder is defined in 18 U.S.C. § 1111. USSG § 2H1.1(a)(1) Note 1. First degree murder is "the unlawful killing of a human being with malice aforethought . . ." 18 U.S.C. § 1111(a).

The Court should adopt the PSR's conclusion that defendant's attack on Luis Lopez was attempted first-degree murder. In the Tenth Circuit, courts apply the first-degree murder cross reference when "the evidence presented demonstrates by a preponderance of the evidence that the defendant harbored malice aforethought and premeditation." *United*

*States v. Wooten*, 696 F. App'x 337, 339 (10th Cir. 2017) (relying on *Fortier*, 180 F.3d at 1226 citing *United States v. Nichols,* 169 F.3d 1255, 1272, 1275–76 (10th Cir. 1999)). Malice aforethought "may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (quoting *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987)).

In *Wooten*, the defendant received a call from his mother that she was under attack from the victim. Wooten armed himself with a gun, traveled over a mile by car, and confronted the victim. When the victim reached for his belt, Wooten fired his gun. The victim ran, and Wooten pursued him, and fired a total of eight times. The victim survived. Wooten was convicted of violating 18 U.S.C. § 922(g) (felon in possession of a firearm). At sentencing, the district court applied the attempted first-degree murder cross reference to Wooten's conviction on the § 922(g) offense. Following an appeal, the Tenth Circuit upheld that application of the attempted first-degree murder cross reference and said that, "while we may not presume premeditation, it is properly inferred where the apparent purpose of the lethal act is to cause the victim's death . . . [f]urther, a killer can develop premeditation during the incident at issue and the government does not need to show that the defendant deliberated for any particular period of time." *Wooten* at 340–41 (internal citations and quotations omitted); *see also United States v. Treas-Wislon,* 3Fd. 1406, 1409

4

(10th Cir. 1986) (a killer can develop premeditation during the incident at issue).

Application of the attempted first-degree murder cross reference in this case is supported by Tenth Circuit precedent and the jury's unanimous verdict. As the evidence presented at trial established, the defendant's attack on Luis Lopez was premeditated and committed with malice aforethought. First, while the government is not required to prove that the defendant contemplated the attack for a particular period of time, the evidence adduced at trial proved that this defendant had, days before this attack, entered another nearby shop, Tito's Auto Sales, and announced that he was looking to kill Mexican persons. Even absent the evidence of the Tito's incident, the Court should find that defendant's attack on Luis Lopez was premeditated because defendant announced his desire to "kill Mexicans" when he entered the family business armed with a hatchet and a large metal pole. The defendant had no legitimate reason to enter Lopez Tires, and he did not know anyone in the Lopez family. The defendant struck Luis Lopez in the head because he perceived Luis to be of Mexican ancestry. The defendant clearly entered Lopez Tires with a plan to attack any "Mexicans" he found there. When he entered Lopez Tires, he demanded to know if Luis Lopez was Mexican moments before attacking him and his family members. This is sufficient to establish premeditation, as the Tenth Circuit has recognized that "a killer can develop premeditation during the incident at issue." *Wooten* at 340-341.

Second, like Wooten, this defendant traveled to the location of the crime armed,

5

here the family-owned business, Lopez Tires, with weapons: a large metal pole and a hatchet. He did not travel to the scene or enter the shop to conduct a business transaction. Instead, the defendant selected Lopez Tires and entered the shop in order to, in his own words, "kill Mexicans."

The defendant's attack on Luis Lopez was committed with malice aforethought. Malice aforethought "may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Wooten* at 340 (internal quotations and citations omitted). In *Wooten*, the defendant fired a gun at the victim and the court concluded that shooting at a person "certainly constitute[d] reckless behavior and a gross deviation from a reasonable standard of care." *Id*. Here, defendant chose to hit Luis in the head with a heavy metal pole. Hitting another person in the head with a metal pole is, like shooting another person, a gross deviation from a reasonable standard of care. Striking Luis in the head with a metal pole was likely to, and in this case did, cause serious bodily harm, and was, as the jury found, intended to cause the death of Luis Lopez. Here, Luis was knocked to the ground, where he choked on his own blood until he was taken to the hospital, intubated, and underwent immediate surgery to repair the damage this defendant caused. The defendant's attack could very easily have killed Luis.

After hearing the evidence presented at trial, the jury found beyond a reasonable

doubt that defendant's attack on Luis Lopez included an attempt to kill. Given the above-referenced caselaw and the jury's finding that the defendant's assault on Luis Lopez included an attempt to kill (Jury Verdict at Doc. 172), this Court should apply the attempted first-degree murder cross reference found at USSG § 2A2.1(a) and further defined within 18 U.S.C § 1111.

The PSR properly applied two adjustments. (PSR at paragraphs 22 and 24). The PSR correctly applied the 3-level adjustment because the defendant "intentionally selected [the victims] . . . as the object of the offense of conviction because of the actual or perceived . . . national origin . . . of any person." USSG §3A1.1(a). As described above, the trial evidence proved beyond a reasonable doubt and the jury found that this defendant selected the Lopez family as his victims because of their national origin, namely that he perceived them as Mexican.

The PSR correctly applied a 4-level adjustment pursuant to USSG § 2A2.1(b)(1)(A), because the victim sustained permanent or life-threatening injuries. "Permanent or life-threatening injury" means "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent." USSG § 1B1.1(K). At trial, Luis Lopez and his treating physician testified that as a result of the defendant's violent attack, Luis Lopez underwent surgery where a metal plate was inserted into his cheekbone to reconstruct his crushed facial bones. Finally, for Count 1, the PSR properly concluded that the Adjusted Offense Level is 40.

(PSR at paragraph 27).

The PSR correctly calculated the guidelines for Counts 2 and 3. The PSR found that the Adjusted Offense Level for Count 2 is 26 and 14 for Count 3. After considering adjustments pursuant to USSG § 3D1.4(a), (b), and (c), the PSR correctly concluded that the Combined Adjusted Offense Level is 40.

The PSR then reviewed the defendant's lengthy criminal history and concluded that his criminal history category is VI. (PSR paragraph 77).

### III. Recommendation

Consistent with the guidelines calculations set forth within the PSR, the United States recommends that this Court sentence the defendant to a term of incarceration between 360 months and life in prison. The United States believes that a sentence of 360 months to life in prison is sufficient but not greater than necessary to serve the goals set forth in paragraph 2 of Section 3553(a).

### A. A guidelines sentence will reflect the seriousness of the offense, 18 U.S.C § 3553(a)(2)(A).

For the Lopez family, the facts and circumstances of the offense could not be more serious. The defendant traveled from business to business looking for "Mexican" victims whom, by his own admission, he wanted to kill. Upon entering Lopez Tires, the defendant threatened to kill the three Lopez men operating their family business, and then tried to carry out his threat by striking Luis Lopez in the head with a metal pole. The blow crushed bones in Luis's face, requiring hospitalization, surgery, and the implantation of a metal

plate in Luis's skull. Fortunately, Luis survived the defendant's vicious attack, but the impact on the Lopez family will haunt them for the rest of their lives. Based on the evidence presented at trial, the jury found that this defendant tried to kill a man he did not know and viciously attacked two other strangers because he believed his victims were Mexican.

This type of crime has consequences that reach far beyond the immediate injury caused to the named victims in the case. Hate crimes, like the one committed by this defendant, put entire communities in fear that they too could become the victim of a violent senseless attack, while at work, in their home, or walking down the street, simply because of where a stranger believes they were born. And, when members of one community are forced to live in fear because of who they are or what country they or their ancestors are from, no person is safe. Hate-fueled violence must be prosecuted and its perpetrators held accountable to the full extent of the law.

This vicious, bias-motivated attack against an innocent family was traumatizing for the family and for the larger community. A significant sentence, one that is consistent with the Sentencing Guidelines, is necessary because of the seriousness of the offense.

### B. A guidelines sentence will protect the public from this defendant, 18 U.S.C. § 3553(a)(2)(C).

This defendant has engaged in a life of violent crime. The defendant's record shows that when he is not incarcerated the public is at risk. The PSR documents twenty-two adult convictions. Of these twenty-two convictions, thirteen involved violent conduct,

including convictions for domestic violence. Most recently, in 2015, this defendant was convicted of Assault. Defendant's probation was revoked in 2018 after he was arrested for a separate assault. (PSR paragraph 74). As the PSR notes, defendant's attack on the Lopez family took place approximately one month after his release from incarceration. (PSR paragraph 74).

In addition to his twenty-two convictions, the defendant has been arrested on at least fourteen other occasions. Of those fourteen arrests, nine were for violent conduct including domestic violence assault (2018) and aggravated assault (2015). Many of these cases were dismissed after the victims failed to appear for scheduled court appearances.

The PSR shows that defendant has a violent criminal history that spans nearly two decades and that has become increasingly violent, culminating in the attempted murder of Luis Lopez. The best way to keep the community safe is for this defendant to be incarcerated. A departure from the sentencing guidelines in this instance risks exposing the public to another violent attack by the defendant.

## CONCLUSION

The facts and circumstances of this crime warrant a significant prison sentence. As described here, this defendant's conduct harmed not only the Lopez family but the greater community as well. Equally as important, this defendant has a demonstrated history of violent conduct against others. Because of the seriousness of this offense and in order to keep the community safe from this defendant, the United States respectfully requests that,

consistent with the calculations in the PSR, this Court sentence the defendant to a term of incarceration between 360 months and life in prison. This guidelines sentence is sufficient but not greater than necessary to reflect the seriousness of the offense and to protect the community.

RESPECTFULLY SUBMITTED April 2, 2021.

ANDREA T. MARTINEZ
Acting United States Attorney

J. DREW YEATES
Assistant United States Attorney


PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division
United States Department of Justice


*/s/ Rose E. Gibson*
ROSE E. GIBSON
Special Litigation Counsel
Civil Rights Division